TEXAS AND PACIFIC RAILWAY COMPANY v. W. T. BRANNON, NEXT FRIEND.

Decided June 23, 1906.

**1.—Discovered Peril—Conflicting Evidence—Verdict.**

Where the vital issue in a case is discovered peril, and the testimony is conflicting, that for the plaintiff being sufficient to support the verdict, the court did not err in refusing to instruct a verdict for the defendant, nor in refusing to set the verdict aside.

**2.—Same—Charge.**

Charge on discovered peril considered, and held a fair presentation of the law on that subject.

**3.—Stopping Trains—Distance—Testimony.**

Where witnesses simply testified as to instances in which they had seen similar trains stop at the same place and the distance within which they were stopped, their testimony was not subject to the objection that they were not qualified to testify as to such matters because they had had no experience in operating trains.

Appeal from the District Court of Parker County. Tried below before Hon. J. W. Patterson.

*H. C. Shropshire,* for appellant.

*J. M. Richards* and *Bernard Martin,* for appellee.

SPEER, ASSOCIATE JUSTICE.—This suit was instituted by appellee as next friend of the minor children of W. A. Cawthon, deceased, alleging that said Cawthon was killed by one of the defendant's freight trains through the negligence and carelessness of its servants and agents, and resulted in a judgment for the plaintiff in the sum of one thousand dollars, which was divided among the three children of deceased.

The vital issue in the case is one of discovered peril, it appearing that at the time deceased was run over and killed he was lying on appellant's track on a bridge asleep or drunk, or both. The testimony offered by appellant tends very strongly to show that its servants operating the train which killed deceased, did everything in their power, after having discovered the presence of deceased on the track, to avoid injuring him; while on the other hand, there is testimony in the record from which we think the jury might reasonably have found that its servants were negligent in this particular after discovering the perilous

position of deceased on the track. Deceased was lying somewhat near the west end of a trestle known as bridge No. 74, which is shown to be about eighteen hundred feet west of a trestle known as bridge No. 75, and was killed by a west bound freight train. There is testimony in the record from which the jury might reasonably have concluded, and they probably did conclude, that the servants of appellant operating this train discovered the presence of deceased on the track and his peril, when the train was in the vicinity of bridge No. 75, and there is ample testimony to show that this was in time to avoid killing deceased. The testimony of appellant's·train operatives as to the distance they were from deceased when they discovered his peril, and that they did everything in their power after such discovery to avoid striking him, is not necessarily conclusive at all upon this issue, but the testimony of other witnesses and the circumstances surrounding the transaction may have been, and we think were, of such cogency as to authorize a finding against appellant upon this issue. This conclusion disposes of appellant's contention that the court should have given a summary instruction to the jury to return a verdict in its favor, and the further contention that the verdict returned and judgment rendered are not supported by the evidence.

Upon the issue of discovered peril the court charged that, "if you believe that W. A. Cawthon was upon one of defendant's bridges on its track and in a dangerous or perilous position, and if you·believe from a preponderance of the evidence, while one of the defendant's trains was approaching said bridge, that the engineer operating said train discovered the presence of the said W. A. Cawthon upon said bridge, and discovered his dangerous position in time to have stopped the train before reaching the said W. A. Cawthon by means within his power, and if you further believe that the said engineer negligently failed to use all the means at his command to stop the train before reaching the said W. A. Cawthon without endangering the lives of those upon said train, or the destruction or damage of the defendant's property, and if you believe that·by reason of such negligence on the part of the engineer to use the means at his command to stop the train, that the same ran over and killed the said Cawthon, and that the plaintiffs were thereby damaged, you will find for the plaintiffs," etc., and further, "if the said W. A. Cawthon was lying down upon the bridge of the defendant, and if the engineer when he first saw him, if he did see him, thought the object he saw was a log or some other inanimate object, and if later he discovered it was a human being, and if the engineer, after discovering that the object on the track was a human being, used all means in his power to stop the train before striking the said Cawthon, without endangering the lives or safety of those upon said train and without endangering the property of the defendant, the defendant would not be liable, for in such case the defendant was under no duty to the plaintiffs to stop train until the agents in charge of the train knew, or thought, the· object upon the bridge was a human being." This was a fair presentation of the issue of discovered peril so far as appellant is concerned, and there was, therefore, no necessity for giving its special charges requested.

Bills of exception numbers 1, 2 and 3 show that appellant objected ·

to various witnesses testifying to the distance within which such a train as that which killed deceased could be stopped, upon the ground that it did not appear from the statements of the witnesses that they had ever had any experience in operating trains and were therefore not qualified to testify as to such a matter. The bills further show, however, in each instance that the witnesses did not undertake to give an opinion at all, but simply detailed instances in which they had seen similar trains stop at the same place, and the distance within which they were stopped. The testimony was not, therefore, open to the objection made, even though it may have been subject to another objection.

We find no error in the judgment and it is therefore affirmed.

*Affirmed.*

Writ of error refused.